IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE Assigned on Briefs December 9, 2014

**STATE OF TENNESSEE v. CHASE NATHANIEL MARTIN**

**Appeal from the Criminal Court for Monroe County**
**No. 12238Amy F. Reedy, Judge**

_____

**No. E2014-00738-CCA-R3-CD – Filed January 30, 2015**

_____

Defendant, Chase Nathaniel Martin, was indicted by the Monroe County Grand Jury for burglary in August of 2012. Subsequently, he entered a best interest plea of guilty and was sentenced to eight years as a Range II, multiple offender on December 10, 2013. The trial court specified that Defendant could apply for Community Corrections. Defendant filed a motion to reconsider sentencing on January 16, 2014. After the denial of the motion to reconsider and denial of a request for placement in Community Corrections, Defendant appealed. We waive the untimely filing of the notice of appeal and review the challenge to the sentence. After a review, we affirm the sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ALAN E. GLENN, J., joined. THOMAS T. WOODALL, P.J., concurred in results only.

Donald Leon Shahan, Jr., Madisonville, Tennessee, for the appellant, Chase Nathaniel Martin.

Herbert H. Slatery, III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Steve Bibb, District Attorney General; and Paul Moyle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Defendant was indicted by the Monroe County Grand Jury for burglary of a building other than a habitation in August of 2012. On September 23, 2013, Defendant entered an open, best

3

interest guilty plea to burglary. At the guilty plea hearing, the State gave the following factual basis for the plea:

On the 10th of June, 2012, [at] approximately 5:33 a.m.[,] the Sweetwater Police Department was dispatched to an alarm coming from the Scrubs Store located in Sweetwater, Tennessee, off of Highway 68 in Monroe County. Officers arrived and noticed that the building was secured except for the rear door. The rear door appeared to have been pried open with damage to the outside casing and no perpetrator was present. In addition the security camera lens w[as] spray painted and the door was unsecured. The officers searched the interior of the store and discovered that the store was not ransacked or really even disturbed at all. The cash register was still intact and none of the money had been taken from the cash register. The Sweetwater Police then contacted the store owner and the store owner advised them that the large quantities of money that the store contains were located in another location. The officers were then told where that location was, they proceeded to search but weren't able to find any of the money or the bag as described by the business owner. Through the investigation Detective Kevin Watson of the Sweetwater Police Department spoke with the employees of the Scrub Store including a Joy Armstrong who stated that she believed that the person who broke into the business was her exboyfriend [Defendant].      She stated [Defendant] had been with her on numerous occasions when she was closing the store and that he had seen the location of numerous bank bags with quantities of U.S. currency as well as the manner in which [they were] stored. At that point [Detective] Watson issued a subpoena for [Defendant's] phone records, and in particular text messages. Text messages that were received from the cell phone carrier included text messages from [Defendant] saying, "Hey, I need to borrow a full face toboggan." "Hey, call me, I need to borrow a toboggan, please." He then sent another text message saying "I'm looking for a crowbar." Jess, who is [Defendant's] apparent girlfriend at the time, said, "For what though?" He then responded "I can't tell you that but I will talk about it when I get there, Sweetie." Et cetera, et cetera. The time line would indicate that those texts were placed immediately before the 5:33 a.m. break-in.   [Defendant] was then interviewed at the Englewood Police Department and read his rights. [Defendant] stated that it was not him but that a Nathan Wood who needed some money and [Defendant] advised that he told Nathan where he could get the money and . . . where the security cameras were located. [Defendant] also advised that he gave Mr. Wood a crowbar and actually drove him to the store and dropped him off and later picked him up.

Defendant signed a waiver of appeal. On the form, it is specifically noted that "Defendant does not waive his right to appeal the sentence."

On December 10, 2013, the trial court held a sentencing hearing. At the hearing, a

4

presence report was entered into evidence. At the time of the hearing, Defendant was twenty-eight years of age. His prior convictions included: obtaining prescription drugs by fraud, driving with a suspended/cancelled/revoked license, possession of marijuana, possession of a schedule III controlled substance, unlawful drug paraphernalia uses and activities, driving with a revoked license, misdemeanor theft, possession of drug paraphernalia, two convictions for passing worthless checks, burglary of a property other than a habitation, and theft of property valued between $1,000 and $10,000. The State sought an enhanced sentence on the basis of Defendant's prior convictions.

Defendant's probation officer, Amanda Saylers, testified at the hearing. According to Ms. Saylers, Defendant had been on probation a total of five times. This included multiple reinstatements and revocations.

Defendant reported to Ms. Saylers that he had just completed a residential inpatient drug treatment program in Chattanooga on September 18, 2013. Despite completion of the inpatient program, Defendant reported to Ms. Saylers that on the weekend of September 28 and 29, 2013, he smoked "as much [marijuana] as he could smoke."

Jill Barrett, Director of the Tenth Judicial District Drug Court, testified that Defendant failed to complete the Drug Court Program in 2008 or 2009. As a result of the failure to complete the program, Defendant was eventually sent to the Department of Correction.

The State also presented the testimony of Detective Watson. He explained that Defendant initially denied his involvement in the crime. Defendant later called police and admitted that he was present but that he was not actually involved in the burglary. He supplied the name of the person he alleged was responsible. That person was never charged.

Defendant presented no proof at his sentencing hearing.

At the conclusion of the sentencing hearing, counsel for Defendant asked the trial court to take Defendant's gang affiliation into account during sentencing. Specifically, trial counsel noted that Defendant was a member of the Aryan Nation but had declared his intention to split from that group, resulting in a "kill threat" on Defendant's life, presumably by other gang members.

The trial court determined that Defendant was a Range II offender and that confinement was necessary to protect society by restraining Defendant who has a long history of criminal conduct. Additionally, the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense, was particularly suited to provide an effective deterrence to others likely to commit similar offenses, and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to Defendant.

The trial court considered in mitigation that Defendant's conduct neither caused nor threatened serious bodily injury. The trial court disagreed with Defendant's assessment of the

application of mitigating factors, specifically noting that Defendant did not play a minor role in the offense or assist the police in detecting or apprehending the perpetrator.

The trial court enhanced Defendant's sentence based on his previous history of criminal convictions in addition to those necessary to establish the appropriate range. The trial court commented:

> [Defendant] is one of those offenders that I personally find heartbreaking. His story to me is a story that I hear over and over again, and that is things happen in life that you don't cause, but then they set a series of events into action. But there does come a point in life where you have got to quit looking back at all that stuff and start taking responsibility for your actions.

The trial court went on to state that Defendant was an "addict" that had "real potential if he would quit following the wrong lead." The trial court sentenced Defendant to the maximum sentence of eight years with the understanding that Defendant could apply to the Community Corrections Program so he could "have one more chance to help [himself]."

Defendant did not file a timely notice of appeal from the December 10, 2013 sentencing hearing. However, on January 16, 2014, counsel for Defendant filed a "Motion for Reconsideration of Sentencing" in which he asked the trial court to consider its "denial of probated sentencing and its sentencing . . . to the maximum sentence in the range."

The trial court held a hearing on March 28, 2014, on the Motion to Reconsider Sentencing. At the hearing, counsel for Defendant stated that he filed the motion to reconsider as, "in essence, basically an appeal of the sentence." Counsel suggested that the motion was filed "[i]nstead of a motion for new trial."

The technical record contains a letter from Gary Conner, the Program Manager of the Community Corrections Program in Cleveland, Tennessee. The trial court considered this letter at the hearing on the Motion to Reconsider Sentencing. In the letter, Mr. Conner states that, in his opinion, Defendant is not a suitable candidate for the Community Corrections Program due to his "extensive criminal history or arrest, convictions, community supervision, and being affiliated with a violent gang."

The trial court determined that Community Corrections was not "appropriate" for Defendant due in part to his gang affiliation. Counsel for Defendant noted that Defendant had tried to take "considerable measures to rid himself" of the affiliation. The trial court expressed the desire to "give everybody every opportunity on every program that we have, but because of the fact that he joined the Aryan Nation violent gang while he was in prison, I am not going to order that the Community Corrections Program take him." The trial court commented that it was a "sad choice" to "tattoo[ ] [a swastika] there on his neck." The trial court denied the motion.

6

On April 17, 2014, Defendant filed a notice of appeal.

*Analysis*

Initially, we must address the State's argument that the notice of appeal is untimely. Under Rule 4(a) of the Tennessee Rules of Appellate Procedure, the notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." Specifically, the rule provides, in pertinent part:

> In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.    The appropriate appellate court shall be the court that determines whether such a waiver is in the interest of justice. Any party may serve notice of entry of an appealable judgment in the manner provided in Rule 20 for the service of papers.

> . . . .

> [i]n a criminal action, if a timely motion or petition under the Tennessee Rules of Criminal Procedure is filed in the trial court by the defendant: (1) under Rule 29(c) for a judgment of acquittal; (2) under Rule 32(a) for a suspended sentence; (3) under Rule 32(f) for withdrawal of a plea of guilty;
> (4) under Rule 33(a) for a new trial; or (5) under Rule 34 for arrest of judgment, the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition.

Tenn. R. App. P. 4(a), (c). A motion to reconsider is not contemplated by the Tennessee Rules of Criminal Procedure. *State v. Turco*, 108 S.W.3d 244, 245 n.2 (Tenn. 2003). Therefore, it does not toll the time for filing a notice of appeal. *State v. Lock*, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992).

In *State v. Biggs*, this Court was presented with an appeal in which the defendant had entered a guilty plea and subsequently applied for probation. 769 S.W.2d 506 (Tenn. Crim. App. 1988). The trial court denied probation, and the defendant filed a motion to reconsider; the trial court concluded that it lacked jurisdiction to consider the motion. On appeal, the State argued that the trial court lost jurisdiction to consider the matter because the defendant's motion to reconsider a denial of probation was not the same thing as a motion to reduce a sentence. *Id.* at 509. This Court disagreed, concluding instead that a motion for reconsideration of probation was in effect a request for a reduction of

sentence under Tennessee Rule of Criminal Procedure 35[1]and, therefore, the trial court retained jurisdiction over the matter. *Id*.

In *State v. Delavan Beniamin Mohammed*, No. M2011-02552-CCA-R3-CD, 2013 WL 1874789, at *5 (Tenn. Crim. App. May 3, 2013), *perm. app. denied* (Tenn. Oct. 16, 2013), this Court considered a similar issue. In that case, the defendant pled guilty with an agreed upon sentence, the manner of service to be determined by the trial court at a sentencing hearing. *Id.* at *1. After the hearing, the trial court denied alternative sentencing. Defendant subsequently filed a "Motion to Reconsider," which the trial court denied. This Court determined that the post-plea motion was, in effect, a motion to reduce his sentence and, "[c]ontrary to the State's assertion, the trial court retained jurisdiction to hear and rule upon [d]efendant's motion" under Tennessee Rule of Criminal Procedure 35. This Court went on to waive the timely filing of the notice of appeal and to consider the merits of defendant's sentencing challenge.

The State, citing *Delavan Beniamin Mohammed*, No. M2011-02552-CCA-R3-CD, 2013 WL 1874789, at *5 (Tenn. Crim. App. May 3, 2013), argues that "to the extent [Defendant] intended his motion to operate as preservation of his sentencing issues, his present appeal can only be from the trial court's denial of the motion to reconsider . . . . Accordingly, [Defendant's] appeal should only be treated as an appeal from the denial of his Tenn[essee] R[ule of] Crim[inal] P[rocedure] 35 motion" and not an appeal from the merits of the original sentencing decision.

We disagree. Defendant's motion specifically sought to reconsider the "denial of probated sentencing and [the trial court's] sentencing of the Defendant to the maximum sentence in the range." While not properly characterized as a motion to reduce Defendant's sentence under Rule 35, we determine that the spirit, character, and text of the motion filed by Defendant was intended to have the effect to reduce Defendant's sentence or secure the grant of an alternative sentence. *See Delavan Beniamin Mohammed*, 2013 WL 1874789, at *5. Therefore, the trial court properly retained jurisdiction to hear and rule on Defendant's post-judgment motion under Tennessee Rule of Criminal Procedure 35.

---

[1]Tennessee Rule of Criminal Procedure 35 provides as follows:

(a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

(d) Appeal. The defendant may appeal the denial of a motion for reduction of sentence but shall not be entitled to release on bond unless already under bond. If the court modifies the sentence, the state may appeal as otherwise provided by law.

As noted above, the appellate rules do not specifically allow a Rule 35 motion to suspend the running of the appeal time from the entry of the judgment. *See* Tenn. R. App. P. 4(c). Thus, the filing of the Rule 35 motion did not toll the time within which to appeal from the original judgment. *Id.* In truth, Defendant's notice of appeal of the sentence imposed on December 10, 2013, is untimely. Defendant's notice of appeal, filed on April 17, 2014, was clearly filed more than thirty days after the judgment was entered on December 10, 2013. However, this Court exercises its authority to waive the timely filing of the notice of appeal and will address Defendant's appeal on the merits. Tenn. R. App. P. 4(a).

*Sentencing*

On appeal, Defendant argues that the trial court improperly sentenced him to the maximum sentence in the range and then denied Community Corrections placement. Specifically, Defendant insists that the denial of Community Corrections at the later hearing was based on information that was known to and considered by the trial court at the time of the sentencing hearing and that the trial court's denial of this alternative sentence amounts to an abuse of discretion. The State argues that even if Defendant can overcome his untimely notice of appeal, he has not demonstrated the impropriety of the sentence.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

At the conclusion of a sentencing hearing, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors;
(6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 4035-102,-103,-210; *see also Bise*, 380 S.W.3d at 697-98.

9

Tennessee Code Annotated section 40-35-114 contains a non-exclusive list of enhancement factors. The weighing of both enhancement and mitigating factors is left to the trial court's sound discretion. We note that even a trial court's misapplication of an enhancement or mitigating factor in imposing a sentence will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.

At the conclusion of the sentencing hearing, the trial court applied enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" in sentencing Defendant to a sentence of eight years in incarceration. *See* T.C.A. § 40-35-114(1). The trial court also applied one mitigating factor, "[d]efendant's conduct neither caused nor threatened serious bodily injury." *See* T.C.A. § 40-35-113(1). Here, Defendant does not assert that the trial court was in error by imposing one enhancement factor and one mitigating factor.

Instead, Defendant argues that the trial court sentenced him to the maximum sentence and then expressed the desire for Defendant to be placed on Community Corrections. When the trial court later denied Community Corrections on the basis of the recommendation of Mr. Conner, Defendant argues that the trial court abused its discretion.

The standard of review which applies to a trial court's decision regarding "probation or any other alternative sentence" is also abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Defendant was eligible for probation for his Class D felony conviction because the sentence actually imposed was ten years or less.
*See* T.C.A. § 40-35-303(a). Nevertheless, an eligible defendant "is not automatically entitled to probation as a matter of law." *Id.* § 40-35-303(b), Sent'g Comm'n Cmts. Moreover, Defendant was not considered a favorable candidate for alternative sentencing because he was sentenced as a multiple offender. *See id.* § 40-35-102(6).

The purpose of the Community Corrections Act of 1985 was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" T.C.A. § 40-36-103(1). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcoholrelated felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

*Id.* § 40-36-106(a)(1)(A)-(F). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36106(d).

Based on the record, we cannot conclude that the trial court abused its discretion in denying Community Corrections. The trial court imposed a sentence of confinement after determining that Defendant had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to him. *See* T.C.A. § 40-35-103(1)(A), (C). The presentence report reflects that Defendant violated his probation at least five times and also failed to complete Drug Court when given that opportunity. The trial court also considered the frequency of thefts and burglaries in Sweetwater, as testified to by the arresting officer and concluded that Defendant's incarceration would be an effective deterrent. Additionally, the "violent gang affiliation" with the Aryan Nation, as evidenced by the multiple tattoos on Defendant's body, including a swastika on his neck and a large tattoo on his abdomen professing "White Pride World Wide," contributed to the trial court's denial of Community Corrections.

Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the court's sentence in this case. *Caudle*, 388 S.W.3d at 280. Defendant pled guilty to burglary of a building other than a habitation, a Class D felony, and faced a sentence of four to eight years as a Range II offender. T.C.A. § 39-14-402(a); T.C.A. § 40-35112(b)(4). The sentence of eight years, as imposed by the trial court, was within that range. The trial court did not abuse its discretion; Defendant is not entitled to relief. Accordingly, we uphold his eight-year sentence in the Tennessee Department of Correction, as a Range II, multiple offender.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE